UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MELVIN A. HART, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) NO. 1:11-cv-00043-MJD-TWP |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| | ) |
| Defendant. | ) |

# Order

Plaintiff Melvin A. Hart requests judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the reasons set forth, the Court remands the case for further proceedings consistent with this opinion.

## I. Background

**A. Procedural History**

On June 28, 2007, Hart filed an application for SSI, alleging disability beginning on March 11, 2005 due to symptoms associated with schizophrenia. The claims were denied initially and upon reconsideration. Thereafter, Hart requested a hearing, which was held before Administrative Law Judge ("ALJ") Albert Velasquez on January 4, 2010. On April 27, 2010, the ALJ denied Hart's application for benefits. Upon the Appeals Council's denial of review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. On January 10, 2011, Hart filed this timely appeal requesting review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

1

**B. Factual Background and Medical History**

At the time of the ALJ's decision, Hart was twenty-seven years old. He had graduated high school but had no past relevant work experience. Hart has paranoid schizophrenia and a history of alcohol and marijuana use. According to Hart, the alcohol helps with the voices in his head.

Hart's symptoms began around October 2004 when he started hearing voices and became paranoid. He was hospitalized in 2004 and against in 2005 because he was hearing voices and hallucinating. The 2005 incident occurred after Hart used cannabis soaked in embalming fluid. In the spring of 2005, Hart began treatment at Behavior Corp. His treatment notes from Behavior Corp show Hart struggled with alcohol and cannabis use with periods of abstinence and continued to suffer periodically from hallucinations and paranoia. On at least two occasions, Hart had setbacks from his treatment when he did not take his required medication.

On September 18, 2007, consulting psychologist Carrie Dixon, Ph.D. performed a Mental Status Examination on Hart. Dr. Dixon found no indications of hallucinations, delusions, or bizarre mannerisms. Hart was able to perform simple tasks such as spelling his name, giving his social security number and address, repeating six digits forward and three backwards. Dr. Dixon concluded that Hart had a Global Assessment of Functioning ("GAF") score of 65 and that Hart exhibited signs of good reality contact with no overt signs of psychosis. Dr. Dixon suspected that Hart's past episodes of psychosis might have been secondary to his substances abuse. On September 25, 2007, Joseph Pressner, Ph.D. reviewed the medical records and concluded that the pattern of treatment notes indicated problems when Hart used alcohol and drugs, and amelioration when he is not.

On April 20, 2009, treating psychiatrist Mary Weber, M.D. completed a Mental Residual Functional Capacity, which indicated that Hart had marked limitations in ten areas of functioning. Dr. Weber concluded that Hart had a lot of negative symptoms from his illness, which severely impeded his ability to work in any meaningful capacity and that Hart would need a very simple structured environment. The ALJ attempted to follow-up with Dr. Weber to ask her additional questions regarding the basis for her opinions. However, Dr. Weber had left her position and Hart's new psychiatrist Louise Brimmo-Longe, M.D. answered the ALJ's questionnaire on April 5, 2010, indicating that Hart had marked limitations in a number of areas. With regard to Hart's limitations if he were to stop substance abuse, Dr. Brimmo-Longe concluded that Hart would still have limitations as he had a genetic predisposition, was in special education classes, and his symptoms started before he started abusing substances. However, Dr. Brimmo-Longe noted that his symptoms would likely be less severe and that Hart would likely be more responsive to treatment if he were to stop substance abuse.

## II. Disability and Standard of Review

Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is

not disabled, despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* Further, this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, …or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th

Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. The ALJ's Decision

At step one, the ALJ found that Hart had not engaged in substantial gainful activity since applying for SSI. [R. 11]. At step two, the ALJ found that Hart had severe mental impairments that included schizophrenia, paranoid type, cannabis abuse, and alcohol abuse. [*Id.*]. At step three, the ALJ found that Hart's combined mental impairments met the requirements of Listing 12.09, but found that excluding Hart's alcohol and substance abuse, Hart did not have an impairment or combination of impairments that met or medically equaled a listed impairment. [*Id.*]. The ALJ found that Hart had the residual functional capacity ("RFC") to perform unskilled, simple, repetitive work requiring no more than superficial interaction with supervisors, co-workers, and the public. [*Id.* at 18]. At step four, the ALJ found that Hart did not have a history of past relevant work necessitating the need to determine at step five whether Hart could perform any other work in the national economy. [*Id.* at 19]. At step five, the ALJ found that Hart could perform jobs that exist in significant numbers in the national economy, including laundry bundler, dishwasher, and housekeeper. Thus, the ALJ found that Hart was not disabled.

### IV. Discussion

This case is unique in that the ALJ found Hart disabled. What is at issue, therefore, is whether, absent Hart's alcohol and drug use, Hart's mental impairments met or medically equaled a listed impairment. Hart argues (1) the ALJ's decision that he did not meet or medically equal a listed impairment is not supported by substantial evidence; (2) the ALJ's

credibility determination is patently erroneous; and (3) the ALJ's decision at step five is not support by substantial evidence.

Under 42 U.S.C. § 1382c(a)(3)(J) "an individual shall not be considered to be disabled … if alcoholism or drug addiction would … be a contributing factor material to the Commissioner's determination that the individual is disabled." A key factor in this determination is whether the claimant would still be found disabled if he or she stopped using drugs or alcohol. 20 C.F.R. § 404.1535; *see also Kangail v. Barnhart*, 454 F.3d 627, 628-29 (7th Cir. 2006). If so, the claimant is deemed disabled "'independent of [their] drug addiction or alcoholism'" and entitled to benefits. *Kangail,* 454 F.3d at 629 (quoting 20 C.F.R. § 404.1535(b)(2)(ii)).

Thus, the ALJ first determines whether the claimant is disabled under the normal five-step analysis. *Gunn v. Astrue*, 3:10-CV-527 CAN, 2011 WL 5826706, at *5 (N.D. Ind. Nov. 17, 2011). If the claimant is disabled under the five-step analysis, the ALJ must next determine which physical or mental limitations would remain if the claimant stopped using drugs or alcohol and whether those limitations are disabling. *Id.* If the remaining limitations are not disabling, the drug addiction or alcoholism is deemed a material factor and the claimant is not entitled to benefits. *Id.* It is the claimant's burden to show that alcoholism and drug addiction is not a contributing factor. *Harlin v. Astrue*, 424 Fed. Appx. 564, 567 (7th Cir. 2011) (citing *Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010); *Para v. Astrue*, 481 F.3d 742, 748 (8th Cir. 2007); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999)).

**A. Substantial Evidence Whether Hart Met or Medically Equaled a Listed Impairment**

Hart argues that substantial evidence fails to support the ALJ's decision that Hart was not disabled because his combined impairments did not meet or equal Listing 12.03. [Dkt. 19 at 14]. Hart argues that he has met his burden by producing substantial medical-psychiatric evidence.

Listing 12.03 is the listing for schizophrenia and requires that a claimant's delusions or hallucinations or the claimant's emotional withdrawal or isolation result in two of the following: "(1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration." 20 C.F.R. pt. 404, subpt. P, App. 1.

According to Hart, the ALJ's decision should be reversed because fairness and justice require it, the ALJ failed to summon a medical advisor, and the ALJ ignored and mischaracterized treatment evidence. The only argument that Hart develops in any meaningful way is his argument that the ALJ ignored and mischaracterized the treatment evidence. The Court agrees that the ALJ mischaracterized the evidence upon which he relied in reaching his conclusion. The ALJ cited evidence that showed that Hart had significant improvements when he stopped abusing substances and took his medications. Such evidence does not establish that Hart's limitations would not be disabling if he were to stop alcohol and drug abuse.

**1. Linking Hart's alcohol and drug abuse with Hart's compliance with his medications**

In initially determining that Hart was disabled when considering his alcohol and drug abuse, the ALJ found Hart had marked restrictions in activities of daily living, moderate to marked difficulties in maintaining social functions, marked difficulties in concentration, persistence, or pace, and that Hart had at least three episodes of decompensation. [R. 12]. As evidence, the ALJ pointed to treating psychiatrist Dr. Brimmo-Longe who noted that due to Hart's hallucinations that impaired his concentration, and the severity of his paranoia, Hart would remain markedly limited in his ability to adapt to changes in work settings, to travel to

7

unfamiliar places or use public transportation, or to set realistic goals. [*Id.*]. Thus, the ALJ found Hart disabled.

Having determined that Hart was disabled, the ALJ needed to determine if Hart would remain disabled if he were to stop abusing alcohol and drugs. As is, the ALJ's decision fails to provide substantial evidence to support the conclusion that Hart would not remain disabled, because the ALJ did not separate Hart's compliance, or, as the case may be, his noncompliance, with his medications from Hart's alcohol and drug use. The Commissioner's response brief acknowledges that the ALJ linked the two by stating, "the evidence cited is entirely consistent with the ALJ's conclusion that his limitations were disabling only when he was abusing substances and noncompliant with his medications." [Dkt. 25 at 9]. That is the problem. The ALJ's task was to determine whether Hart's limitations were disabling only when he was abusing substances or whether his limitations would remain disabling if he stopped abusing substances. From the ALJ's reasoning, one cannot reach the conclusion that, so long as Hart refrains from abusing substances, he is not disabled, because the ALJ does not consider Hart's alcohol and drug abuse separately from Hart's noncompliance with his medication.

Turning to the question of whether Hart would remain disabled if he stopped abusing alcohol and drugs, the ALJ looked at the treatment evidence. It is at this point that the ALJ's decision mischaracterizes the treatment evidence to reach his conclusion. Throughout the ALJ's decision, the ALJ maintains the treatment evidence establishes that so long as Hart took his medications and abstained from alcohol and drug abuse, Hart saw significant improvements. [R. 15]. While that may be the case, it does not necessarily lead to the ALJ's conclusion that absent alcohol and drug abuse, Hart is not disabled. In fact, the ALJ's discussion focuses more on Hart's failure to comply with his medication than it does his alcohol and drug abuse. Thus, from

8

the ALJ's own reasoning, Hart's failure to take his medications impacted his functioning at least as much, if not more than, Hart's alcohol and drug abuse.

For example, immediately after noting that Hart's treatment program resulted in significant improvements in symptoms, insight, and functioning when Hart took his medications and stopped drinking and abusing drugs, the ALJ focused his discussion on Hart's failure to take his medications. The ALJ stated that the "Behavior Corp therapy notes reflect that in March 2006 the claimant appeared stable, and recognized the benefit of taking his medications." [R. 15]. The ALJ then discussed two incidents where Hart had setbacks with paranoid delusions and auditory hallucinations returning because he failed to take his medications. The first, in June 2006, after Hart did not get his prescribed injections.[1] The second incident, in September 2006, Hart was stabilized after he resumed taking his medications and stopped using marijuana. Later, the ALJ noted "in February 2008 the claimant again reported that since his last visit he had periods during which he did not take his medications, and he recognized that this was why he sometimes heard voices." *Id.*

In concluding that Hart would not be disabled, absent his substance abuse, the ALJ cited the modest clinical findings, together with the significant clinical improvement to medication therapy and counseling. In so concluding, the ALJ "ignores one of the most serious problems in the treatment of mental illness—the difficulty of keeping patients on their medications. The drugs used to treat schizophrenia, for example, can make a patient feel drowsy and stunned." *Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir. 2010) (citations omitted); *see also Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) (explaining that "people with serious psychiatric problems are often incapable of taking their prescribed medications consistently").

---

[1] Treatment notes appear to indicate that Hart was cannabis free at this point and are silent as to Hart's alcohol use. [R. 290].

From the ALJ's discussion of Hart's two setbacks, Hart's noncompliance with taking his medications appears to be a significant issue, yet the ALJ never discussed the issue separate from his discussion of Hart's alcohol and drug abuse.[2] To reach his conclusion, the ALJ had to either disregard Hart's noncompliance with his medications or conclude that Hart's alcohol and drug abuse caused his noncompliance.[3] In either case, the ALJ fails to adequately explain his reasoning, because he fails to disentangle Hart's alcohol and drug use from his failure to take his medications. *See Harlin*, 424 Fed. Appx. at 568 (remanding, in part, because the ALJ failed to adequately disentangle the effects of claimant's drug abuse from those of her other impairments). Because of this, the Court cannot conclude that substantial evidence supports the ALJ's decision and must remand for further proceedings.

### 2. Weight given to treating psychiatrists

Having already determined that the case should be remanded, the Court finds it necessary to address the ALJ's handling of the treating psychiatrists, Dr. Weber and Dr. Brimmo-Longe. An ALJ is required to give controlling weight to a treating source's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. § 416.927(d)(2); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). If an ALJ rejects a treating source's opinion, the ALJ

---

[2] To the extent that the ALJ held Hart's noncompliance with his medications against him, the ALJ erred by not considering Social Security Ruling 82-59 titled "Failure to Follow Prescribed Treatment." SSR 82-59. Under SSR 82-59, when "an individual is disabled, but prescribed treatment is expected to improve the disability, and the individual refuses to follow the treatment, the individual is therefore not disabled under the SSA." *Conner v. Barnhart*, No. 1:04CV0469-JDT-TAB, 2005 WL 1939951, at *4 (S.D. Ind. June 28, 2005). However, under SSR 82-59, the ALJ should consider any justifiable cause for failure to follow prescribed treatment. SSR 82-59. The ALJ never considered any reasons why Hart failed to take his medications.

[3] The ALJ never expressly stated that he believes Hart failed to comply with his medications because of his alcohol and drug abuse, but he implies it in several points. The evidence, however, does not establish such a correlation. There is no indication that either of his two setbacks were the result of his alcohol and drug abuse. In fact, alcohol and drug abuse seemed to have not played any role in the June 2006 setback and it is unclear what, if any, role cannabis played in the September setback. The ALJ never considered whether Hart turned to alcohol and drugs after he stopped taking his medication or vice versa.

must provide a sound explanation for that decision. *Punzio*, 630 F.3d at 710. If the ALJ does not give the treating physician's opinion controlling weight, the ALJ cannot simply reject the opinion. *Thompson v. Astrue*, 780 F. Supp. 2d 737, 743 (N.D. Ind. 2011) (citing SSR 96–2p). The ALJ is required to determine the weight to give a treating source's opinion by considering all of the following factors: the length, nature and extent of the treatment relationship; the degree to which the opinion is supported by the evidence; the consistency of the opinion with the record as a whole; and whether the doctor is a specialist." *Id.* at 743-44( 20 C.F.R. § 404.1527(d)).

In this case, the ALJ gave Dr. Weber's opinions no weight. [R. 18]. The ALJ, however, failed to consider the length, nature, and extent of Dr. Weber's treatment, and failed to consider whether Dr. Weber was a specialist. The ALJ never discussed what weight to give Dr. Brimmo-Longe's opinions. Upon remand, the ALJ should consider all of the factors above for both treating psychiatrists.

The ALJ's reasoning for giving no weight to Dr. Weber's opinions suffers from the same flaw as his reasoning that Hart was not disabled. The ALJ found unpersuasive Dr. Weber's opinion that Hart had marked limitation in his ability to carry out short and simple instructions, make simple work-related decisions, maintain attention and concentration for extended periods, maintain a regular work schedule, or complete a normal work day or work week without interruptions from his symptoms. [*Id.*]. According to the ALJ, Dr. Weber's opinions were conclusory and were refuted by a substantial portion of the record, which showed that "when he stopped drinking and abusing drugs, and took his medications as prescribed, the symptoms, clinical findings, and adaptive functioning related to his schizophrenia all significantly improved." [*Id.*]. As previously discussed, the ALJ's task was to determine Hart's remaining

11

limitations when he stopped drinking and abusing drugs. If noncompliance with his medication was an issue, the ALJ should have considered it separate from Hart's alcohol and drug abuse.

Additionally, the ALJ inconsistently discusses the medical evidence. Early in his decision, the ALJ found Hart markedly limited in activities of daily living, moderate to marked difficulties in maintaining social functions, marked difficulties in concentration, persistence, or pace, and that Hart had at least three episodes of decompensation. [*Id.* at 12]. Thus, Dr. Weber's opinions are consistent with the ALJ's own findings. Dr. Brimmo-Longe also offered similar opinions regarding Hart's limitations, which the ALJ specifically cited to as evidence of Hart's disability. Later, to give no weight to Dr. Weber's opinions, because substantial portions of the record refuted them, is hardly a sound explanation for rejecting them when the ALJ himself made similar findings.

The Commissioner argues that, while the ALJ found marked limitations in the areas Hart claims he had such limitations, the ALJ attributed those limitations to Hart's alcohol and drug abuse. [Dkt. 25 at 8]. Thus, the ALJ rejected Dr. Weber's opinions because they lacked any indication whether they included or excluded the effects of Hart's history of alcohol and substance abuse. However, Dr. Weber concluded Hart "has schizophrenia and has alot (sic) of negative symptoms of the illness which severely impede his ability to work in any meaningful way." [R. 362]. While Dr. Weber does not specifically address Hart's history of alcohol and substance abuse, a fair reading of her conclusion suggests that Dr. Weber believed Hart's limitations resulted from his schizophrenia and not from his alcohol and drug abuse.

Further, the ALJ requested more information from Dr. Weber regarding the basis for her opinions and provided a questionnaire for her to fill out. [R. 401]. By that time, Dr. Weber was no longer with Behavior Corp and Dr. Brimmo-Longe answered the questionnaire. In

responding to a question regarding Hart's remaining limitations if he were to stop abusing substances, Dr. Brimmo-Longe stated:

> If Mr. Hart were to stop substance abuse, which has decreased, at present, his limitations would likely remain at a less level of severity, likely more responsive to treatment. His limitations would not resolve as he has significant genetic predisposition from both parents, he was in special education classes and his symptoms started prior to starting the use of substances.

[*Id.* at 413]. Hart contends this statement is evidence that Hart would remain disabled absent alcohol and drugs. The ALJ's only mention of this opinion suggests that the ALJ thought it supported his conclusion. That Hart's limitations would likely be less severe, however, does not necessarily mean that Hart would no longer be disabled. Stated another way, Hart's limitations could improve, but remain severe enough that Hart would still be considered disabled.

Thus, while the ALJ was not required to give Dr. Weber's or Dr. Brimmo-Longe's opinions controlling weight, the ALJ had to provide a sound explanation for the weight given to the opinions. The Court finds that the ALJ has not provided a sound explanation for giving Dr. Weber's opinion no weight and failed to determine what weight to give Dr. Brimmo-Longe's opinions.

**B. Credibility**

Hart also challenges the ALJ's credibility assessments. The ALJ found the testimony of Hart and his case manager Essy Jones not entirely credible on the issue of total disability. In general, "[a]n ALJ is in the best position to determine the credibility of witnesses," and [the Court] will review that determination deferentially." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Accordingly, courts will generally not overturn an ALJ's credibility determination unless it is patently wrong. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). However, the ALJ's credibility findings must still be supported by substantial evidence and the ALJ must explain his

decision in a way that allows a court to determine whether the ALJ reached the decision in a rational manner, logically based on specific findings and the evidence. *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011).

According to Hart, the ALJ did not consider SSR 96-7, which provides a list of seven factors the ALJ must consider when assessing the credibility of an individual's statements. In response, the Commissioner argues that the ALJ considered the modest clinical findings, Hart's good response to treatment with medication, and Plaintiff's activities, including his ability to sustain himself independently and perform a number of activities. [Dkt. 25 at 11]. However, as required by SSR 96-7, the ALJ does not discuss the frequency of Hart's symptoms, nor any precipitating or aggravating factors other than perhaps his alcohol and drug abuse. Additionally, the ALJ does not discuss which of Hart's specific statements he found not credible, nor does he provide any reason for why he found Hart not credible. This prevents the Court from conducting any meaningful review.

With regard to Jones, the ALJ stated that she failed to make a distinction between Hart's functioning when he was abusing alcohol and drugs, and when he was sober, which significantly lessened the persuasiveness of her testimony. [R. 17]. During the hearing, the ALJ questioned Jones on Hart's alcohol and drug abuse,[4] however, the ALJ never asked her to make a distinction between Hart's functioning when he abused alcohol and drugs, and when he was sober. Further, Ms. Jones testified that, as far as she knew, Hart had not used drugs in over a year based upon reports and drug testing. [*Id.* at 38]. Jones thought that the alcohol and drugs were not relevant because Hart was not doing them. [*Id.* at 39]. Thus, impliedly, Jones' testimony took into

---

[4] The ALJ also questioned Jones about Hart's medications and whether she actually observed Hart taking his medications. [R. 36-38]. Jones responded that she knows when he is not on his medications because he is more paranoid. [*Id.* at 37]. This is another example of the ALJ focusing on Hart's noncompliance with his medications, but failing to address the issue separately in his written decision.

account Hart's lack of drug use when she testified that Hart tends to be very forgetful and that he would not have been at the hearing had she not called him twice to remind him. [*Id.* at 33]. For these reasons, the Court finds that the ALJ has not explained his decision in a way that allows this Court to conclude that he reached his credibility determinations in a rational manner, logically based on specific findings and the evidence.

### C. Step Five Determination

Because the Court is remanding the case for the ALJ to determine whether Hart would remain disabled if he were to stop abusing substances, it is unnecessary to address Hart's step five arguments.

## V. Conclusion

For the above stated reasons, the Court remands the case for further proceedings consistent with this opinion.

Dated: 02/27/2012

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution List:
Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com